IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DONALD THORNBRUGH**,

        Plaintiff,

v.

**NANCY A. BERRYHILL**,
Commissioner of Social Security,

        Defendant.

Case No. 3:16-cv-1872-SI

**OPINION AND ORDER**

Bruce W. Brewer, P.O. Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

    Donald Thornbrugh ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act. For the following reasons, the Commissioner's decision is AFFIRMED.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff filed an application for DIB on December 11, 2012. AR 219. He then filed an application for SSI on December 14, 2012. AR 221. In both applications, Plaintiff alleged he became disabled as of August 31, 2009. AR 219, 221. Born in 1960, Plaintiff was 49 years old at

PAGE 2 – OPINION AND ORDER

the alleged disability onset date and was 54 years old at the time of the hearing. AR 219. He left high school in the ninth or tenth grade and later attended GED courses when he was 19 years old; however, he did not obtain a degree. AR 39, 283. 380. Plaintiff had past relevant work as a sheet metal laborer, sheet metal machine operator, and "grinder." AR 53, 273. He alleged disability due to personality disorder and chronic pain. AR 282.

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 155, 159, 165, 168, 171. On March 9, 2015, a hearing was held before ALJ Jo Hoenninger, at which Plaintiff, his counsel, Vocational Expert ("VE") Gary Jesky, and Plaintiff's sister Kimberly Kerbs, were present. AR 32-66. The ALJ found Plaintiff not disabled in a decision dated April 22, 2015. AR 9-24. The Appeals Council denied Plaintiff's subsequent request for review on July 19, 2016, making the ALJ's decision the final decision of the Commissioner. AR 1-3; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis, as noted above. The ALJ began her opinion by noting Plaintiff met the insured status requirements of the Act through December 31, 2014. AR 12. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 31, 2009, the alleged disability onset date. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: borderline intellectual functioning, affective disorders, and personality disorders. *Id.* The ALJ found Plaintiff's pneumonia, bronchitis, gastroesophagel reflux disease, hematochezia, Barret's esophagus, gastric polyps, left shoulder fracture, and respiratory impairment were non-severe medically determinable impairments. AR 12-13. The ALJ also found Plaintiff's alleged post-traumatic stress disorder was not a medically determinable impairment. At step three, the ALJ found Plaintiff did not have an impairment or

combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 13.

The ALJ next determined Plaintiff's RFC and found that he could perform a full range of work at all exertional levels, with the following non-exertional limitations: he could understand and remember simple instructions; he had sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks; he could make simple work related decisions; he should have only occasional contact with the general public and co-workers; and he could accept supervision. AR 15. At step four, the ALJ found Plaintiff could perform his past relevant work as a sheet metal laborer. AR 24. The ALJ ended the sequential analysis at step four and concluded that Plaintiff was not disabled from August 31, 2009, through the date of the decision, April 22, 2015. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) rejecting the medical opinion of James Bryan, Ph.D., and (B) finding Plaintiff was able to return to his past work as a sheet metal laborer at step four of the sequential analysis. The Court addresses each argument in turn.

**A. Medical Opinion of James Bryan, Ph.D.**

Plaintiff first argues that the ALJ erred by giving limited weight to the opinion of examining psychologist Dr. Bryan. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques

PAGE 6 – OPINION AND ORDER

and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *See Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Dr. Bryan conducted a neuropsychological evaluation of Plaintiff on September 7, 2012. AR 375-88. Dr. Bryan noted that Plaintiff was open and talkative, although he was moderately irritable and had an "aggressive attitude in his description of past conflicts;" he tracked interview and test instructions without difficulty; his psychomotor pace was moderately accelerated; and his thought processes were "logical, coherent, and well-organized." AR 381. On testing, Plaintiff scores ranged from extremely low to average, indicating "generally borderline functions." AR 385. Dr. Bryan diagnosed Plaintiff as having a moderate level of major depression and borderline intellectual functioning with paranoid and borderline personality features. AR 386. Dr. Bryan also noted cannabis abuse. *Id.*

Dr. Bryan concluded that Plaintiff was unable to sustain employment because he could not meet "minimum competitive standards" in the abilities to: understand and remember instructions; sustain concentration, attention, and persistence; and engage in appropriate social interaction. AR 387. Specifically, Dr. Bryan found Plaintiff's literacy and verbal comprehension difficulties would impede his ability to learn new instructions, his borderline working memory and processing speed would interfere with learning and pace, and the "magnitude of [Plaintiff's] depression would impede his ability to follow through with virtually any employment tasks." AR 387-88. The doctor also found, however, that Plaintiff could work part-time in a "specialized 'niche' environment, with little social contact, little requirement of verbal or literacy skills, and minimal contact with supervisor[s]." AR 387. Finally, Dr. Bryan "strongly recommended" that Plaintiff seek mental health treatment, including individual counseling and medication management. AR 388.

Dr. Bryan's opinion was contradicted by the opinions of Donna Wicher, Ph.D., and Shawn Johnston, Ph.D.; therefore, the ALJ needed to provide specific and legitimate reasons for

PAGE 8 – OPINION AND ORDER

giving less weight to Dr. Bryan's opinion. AR 369-73, 391-95; *see also Lester*, 81 F.3d at 830. The ALJ first found Plaintiff's ability to "work successfully from 1998 to 2009 despite [his] limitations" suggested his limited cognitive and social functioning were not disabling. AR 20. Plaintiff argues the ALJ erroneously assumed Plaintiff's impairments went unchanged after he stopped working in 2009. As the ALJ noted, however, the medical record demonstrated Plaintiff "likely had a learning disorder all of his life." AR 18; *see also* AR 370 (Plaintiff reported he was in special education classes due to a learning disorder), 379-80 (Plaintiff stated he was placed in special education classes and needed his mother's help with filling out job applications), 393 (special education classes). Moreover, Plaintiff's sister, Ms. Kerbs, testified that Plaintiff had anger issues "since he was a kid," yet as the ALJ noted, Plaintiff was able to work for 21 years "with only two episodes of conflict with others." AR 64, 20; *see also* AR 370, 377, 380, 391. Accordingly, Plaintiff's demonstrated ability to work for a significant number of years despite his impairments was a sufficiently specific and legitimate reason for the ALJ to give less weight to the cognitive and social functioning limitations diagnosed by Dr. Bryan. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988).[1]

Plaintiff next argues that the ALJ failed to account for Dr. Bryan's opinion that Plaintiff's depression would preclude him from working. The ALJ, however, found Dr. Bryan's assessment of Plaintiff's psychological impairments was undermined by Plaintiff's effective mental health treatment. AR 20. At the time of Dr. Bryan's September 2012 evaluation, Plaintiff was not taking any medication to treat his psychological symptoms. AR 380. Noting this, Dr. Bryan

---

[1] Notably, the VE also testified that Plaintiff could perform his past work as a sheet metal laborer, as well as other jobs existing in the national economy, even if he was limited to jobs that did not require him to "read, write or do math as a work function." AR 57.

"strongly recommended" Plaintiff seek "both individual counseling and medication management." AR 388. Despite that recommendation, Plaintiff stated he would not take any medication during a June 2013 intake assessment with Clackamas County Behavioral Health. AR 401; *see also* AR 479. After Plaintiff started taking psychotropic medications in late 2014, however, he reported improvement with his anger and depression. AR 20 (citing AR 451-53). Additionally, Plaintiff testified at the hearing that his medications effectively treated his symptoms and did not present any adverse side effects. AR 44. Accordingly, the fact that Dr. Bryan's opined limitations were based on Plaintiff's symptoms before he started receiving effective mental health treatment was a specific and legitimate reason for the ALJ to give limited weight to Dr. Bryan's opinion. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."); *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (noting the efficacy of a claimant's medication is a relevant factor for an ALJ to consider when evaluating medical opinions).

  The ALJ also found that Dr. Bryan's opinion that Plaintiff was unable to engage in appropriate social interaction was inconsistent with the observations of Plaintiff's treating and examining physicians, who noted that Plaintiff "was generally friendly, pleasant and cooperative." AR 20 (citing AR 371, 394, 404). The ALJ further determined that the severity of Plaintiff's social functioning limitation as diagnosed by Dr. Bryan was inconsistent with Plaintiff's reports "that he enjoyed talking to kids that visited him." *Id.* (citing AR 398, 401). At one point, Plaintiff even reported that high school students visited him so regularly that the management of the complex where Plaintiff resided took issue with it. AR 401. These findings were sufficiently specific and legitimate reasons for the ALJ to give less weight to Dr. Bryan's

opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (noting that the ALJ's reliance on medical evidence documenting that the claimant was socially appropriate at examinations and medical appointments was a sufficient basis for giving less weight to a treating psychiatrist's opinion); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that an ALJ may reject a medical opinion to the extent it is inconsistent with a claimant's daily activities).

Plaintiff asserts that the ALJ never relied on Plaintiff's improvement with medication as a basis for rejecting Dr. Bryan's opinion, nor did the ALJ rely on instances when Plaintiff was noted as being pleasant and cooperative by his medical sources as a basis for discounting Dr. Bryan's opinion. Thus, argues Plaintiff, those reasons are impermissible *post-hoc* justifications being offered by the Commissioner. Plaintiff's argument fails.

After thoroughly summarizing Dr. Bryan's examination and report of Plaintiff's limitations, the ALJ, over the course of two paragraphs, detailed her reasons for giving Dr. Bryan's opinion limited weight. AR 19-20. The rationalizations Plaintiff complains are *post-hoc* justifications were discussed by the ALJ in the second paragraph, immediately preceding the ALJ's discussion of Dr. John Ellison's April 2013 physical evaluation. AR 20. Although the ALJ did not specifically mention Dr. Bryan by name in the second paragraph, she expressly discussed the limitations Dr. Bryan put forward in his report. *Id.* Read in context, the ALJ's reasoning is easily discernible. *Molina v. Astrue*, 674 F. 3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, [a reviewing court] must uphold it if the agency's path may reasonably be discerned." (quotation marks omitted)); *see also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("Context is a primary determinant of meaning"). In sum, because the ALJ's reasons for

rejecting Dr. Bryan's opinion were specific, legitimate, and based on substantial evidence in the record, the ALJ did not err in giving limited weight to Dr. Bryan's opinion.

## B. The ALJ's Step Four Findings

The ALJ found Plaintiff not disabled because he was capable of returning to his past relevant work as a sheet metal laborer. AR 24. At step four of the sequential analysis, the ALJ must determine whether a claimant is capable of performing his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past work. 20 C.F.R. §§ 404.1560(b), 416.960(b). In determining the requirements of a particular position, the ALJ may refer to a claimant's past work as he actually performed it, 20 C.F.R. §§ 404.1565(b); 416.965(b), or the ALJ may take administrative notice of generic job descriptions contained in the *Dictionary of Occupational Titles* ("DOT"). *See* Social Security Ruling ("SSR") 82-61, *available at* 1982 WL 31387, at *1-2. Typically, the claimant is the primary source of information about his or her past relevant work. SSR 82-62, *available at* 1982 WL 31386, at *3. A VE, however, "may offer relevant evidence . . . concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work." *Id.*

Plaintiff first argues that the ALJ's step four finding was erroneous because Plaintiff never actually worked as a sheet metal laborer. This assertion is belied by the record. In a prior application for disability benefits that Plaintiff filed in April 2010, he listed "sheet metal laborer" as his only past work. AR 240-41. In the current application, he listed the same position as a "lead person," but gave no description beyond that. AR 275. At the hearing, the VE asked Plaintiff to clarify his reported work as a sheet metal laborer because Plaintiff also reported that

PAGE 12 – OPINION AND ORDER

he used tools and equipment in that position. AR 51. In response, Plaintiff described that he moved parts around as a "material handler" and operated various machines to fabricate parts, but "not at first." AR 51-52. Based on Plaintiff's testimony, the VE stated "it sounds like he started off as a laborer which is heavy, unskilled, SVP[2] 2, but then ended up operating equipment in sheet metal which is heavy, skilled, SVP 6." AR 53 (footnote added). The ALJ then asked the VE whether a hypothetical individual with Plaintiff's RFC could return to Plaintiff's past relevant work, to which the VE responded that only Plaintiff's past work as a sheet metal laborer was suitable, both as Plaintiff performed it, and as the job is generally performed. AR 56.

Plaintiff argues that his testimony illustrates that he worked exclusively as a sheet metal equipment operator, and the VE misconstrued Plaintiff's description of the tasks he performed while training to become an equipment operator as evidence that he also worked as a sheet metal laborer. The Court deems this argument waived because Plaintiff's counsel cross-examined the VE at the hearing, yet counsel did not mention, let alone challenge the VE's classification of Plaintiff's past relevant work. AR 58-59; *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999) ("[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"). Moreover, the Court declines to adopt Plaintiff's preferred interpretation of the evidence, as variable interpretations of the evidence are insignificant when the ALJ's interpretation is rational and based on substantial evidence. *Batson*, 359 F.3d at 1193. Thus, the ALJ did not err in finding Plaintiff worked as a sheet metal laborer.

Plaintiff next argues that even if he did work as a sheet metal laborer, the ALJ's step four finding was unsupported because Plaintiff's RFC is incompatible with the sheet metal laborer

---

[2] Specific Vocational Preparation.

position. As Plaintiff notes, the VE testified that "sheet metal laborer" requires a SVP level of two, whereas the DOT designates an SVP level of three. *Compare* AR 53, *with* DOT 509.687-026, *available at* 1991 WL 673712. Plaintiff argues that an SVP level three job is semi-skilled, the ALJ limited Plaintiff only to unskilled jobs, and thus Plaintiff could not perform the sheet metal laborer position. Plaintiff's argument is unavailing for two reasons. First, there was no conflict between Plaintiff's RFC and the DOT. Contrary to Plaintiff's assertion, the ALJ did not find that Plaintiff was limited to unskilled jobs; rather, the ALJ limited him to carrying out only "simple, routine tasks." AR 15. A limitation to simple, routine tasks implicates General Educational Development ("GED") levels identified in the DOT, *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015), whereas SVP levels indicate the amount of time it takes the "typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, § II, *available at* 1991 WL 688702.[3] In *Zavalin*, the Ninth Circuit held that "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of [GED] Level 3 Reasoning." *Id.* The Court further noted that a GED level of two was more consistent with a limitation to simple, repetitive, and routine tasks. *Id.* Here, the DOT assigns a GED level of two to the sheet metal laborer position. *See* DOT 509.687-026. Therefore, there was no apparent conflict between Plaintiff's RFC and the sheet metal laborer position as classified by the DOT.

Second, even assuming, *arguendo*, that the ALJ's failure to correct the VE's divergence from the DOT was error, it was harmless. "At step four, a claimant has the burden to prove that

---

[3] A GED level of two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." A GED level of three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, § III.

he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)). Plaintiff's reliance on the DOT addresses how the sheet metal laborer position is generally performed. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]."). The VE, however, also testified that Plaintiff was capable of returning to that job as he actually performed it. *See* AR 56. "ALJs may use either the 'actually performed test' or the 'generally performed test' when evaluating a claimant's ability to perform past work." *Stacy*, 825 F.3d at 569 (quoting SSR 82-61).[4] Thus, even if the ALJ erred in finding that Plaintiff was able to return his past work as described in the DOT, that error would be rendered harmless by the ALJ's finding that Plaintiff was capable of returning to his past work as he actually performed it. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("A decision of the ALJ will not be reversed for errors that are harmless." (quoting *Burch*, 400 F.3d at 679).

**C. Step Five Argument**

The Commissioner argues that the ALJ's decision should be upheld even if the ALJ erred at step four, arguing that any step four error would be harmless because there is evidence to support a finding at step five that Plaintiff could perform other work existing in significant numbers in the national economy. The Commissioner points to the VE's testimony that Plaintiff was capable of performing the representative occupations of janitor and laundry worker, of which there were greater than two million positions in the nation. AR 57. Thus, the Commissioner asserts that the Court should affirm the ALJ's finding that Plaintiff was not

---

[4] In *Stacy*, the Ninth Circuit observed that the "'generally performed test' is designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy*, 825 F.3d at 569 (citation omitted).

disabled because the VE's identification of other significant work was based on Plaintiff's properly determined RFC, and directs a finding of not disabled at step five.

An ALJ's error at step four may be found harmless when the ALJ makes an alternative step five finding that the claimant is capable of performing other work in the national economy and is therefore not disabled. *Tommasetti*, 533 F.3d at 1042; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, however, the ALJ did not proceed to step five after finding Plaintiff not disabled at step four.

A reviewing court "may not uphold an agency's decision on a ground not actually relied on by the agency." *Molina*, 674 F.3d at 1121 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Based on this well-settled principle of administrative law, some district courts in this circuit have declined to find an ALJ's error at step four harmless when the ALJ did not proceed to step five, despite clear evidence that the plaintiff's claim would have ultimately failed at step five. *See, e.g.*, *Carolyn Braddock Townsend v. Colvin*, 2015 WL 6673677, at *9 (C.D. Cal. Oct. 30, 2015); *Smith v. Colvin*, 2015 WL 276727, at *3 (C.D. Cal. Jan. 22, 2015). Other district courts, however, based on a VE's testimony that the claimant is capable of adapting to other work in the economy, have filled the gap left by an ALJ who failed to make an explicit step five finding. *See Summers v. Astrue*, 2011 WL 1211860, at *3 (C.D. Cal. Mar. 30, 2011); *Hadnot v. Astrue*, 2008 WL 5048428, at *11-12 (N.D. Cal. Nov. 25, 2008), *aff'd on other grounds*, 371 F. App'x 875 (9th Cir. 2010); *Cowan v. Astrue*, 2008 WL 2761684, at *10 (N.D. Cal. July 14, 2008). The Ninth Circuit has not addressed this issue.

Although this argument by the Commissioner raises interesting issues, the Court has determined that the ALJ did not err at step four. Thus, the Court does not reach the question of

whether it has the authority to make a step a five finding and whether any claimed error at step four would have been harmless because Plaintiff would have been found disabled at step five.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 27th day of March, 2018.

/s/ Michael H. Simon  
Michael H. Simon  
United States District Judge